JAMES D. FOSTER, Superintendent of the Poor of Fulton County, Appellant, *v.* GEORGE CRONKHITE and others, Superintendents of the Poor of Warren County, Respondents.

To make a person liable, under the provisions of section 81 of the Revised Statute relating to the support of the poor, for removing, without legal authority, a poor and indigent person to another county, it must be alleged, and proved to be, *with intent* to make such county chargeable with the support of such pauper. The same intent must also be established, where the action is to make the county from which the pauper was removed liable under such provisions.

The intent with which the removal is effected, is the gravamen of the criminal offense.

THE appeal in the case is from the judgment of the General Term of the Supreme Court in the fourth district, affirming a judgment in favor of the defendants, upon the report of a sole referee before whom the action was tried.

The complaint sets forth a cause of action for the expenses incurred by the plaintiff in his official capacity for the support of three persons, paupers, and residents of Warren county, who had been removed, without legal authority, or enticed from Warren county to Fulton county, with intent to make the latter county chargeable with the support of the said paupers. The plaintiff, as such superintendent, served notice of the illegal removal of the said paupers to the county of Warren, and requiring the defendants to take charge of them. The defendants, in due season, served a counter-notice, denying the charge, as authorized by statute. The defendants, by their answer, put the main facts alleged in the complaint at issue by a proper denial, and also alleged that the removal of the paupers was by their solicitation, to assist them in going to Canada, where they asserted that they had relatives, and that the paupers left Warren county with the intention of going there, and that no one who aided them had any intent of making them chargeable upon Fulton county.

The referee found, from the evidence, that the three persons named were poor inhabitants and residents of Warren

county, and while so residing there, were supported by that county, and so continued till they left the poor house. That they went to Fulton county with means and money furnished by Stephen Griffin, 2d, one of the defendants. That the said Griffin and others aided them in removing; that they applied to the plaintiff, as superintendent, for relief as indigent persons, in a week after their arrival, and have ever since been maintained by Fulton county, and he assessed the damages for their support, to the time of the commencement of the action, to the sum of $63.38.

He also found that all the steps had been taken required by statute to charge the defendants officially in such cases. That such paupers represented to the defendant Griffin that they desired to remove to Canada; that they had a house, property and friends there, and asked for twelve dollars to assist them to Fonda, Montgomery county, where they had children, &c.; that defendant Griffin furnished the money to the said paupers in consequence of the said representations, and under the belief that they would go to Fonda, and from thence to Canada. The referee also found that neither the defendant Griffin, nor any of the persons who assisted the said paupers in removing, did so with the intent of making the county of Fulton chargeable with their support. He then found, as a conclusion of law, that there was no cause of action against the defendants, and that they recover costs and disbursements of the plaintiff.

The plaintiff excepted to the conclusion of law found by the referee, and also to the facts as found, but it is unnecessary further to refer to the latter exceptions, as there is nothing in them subject to review in this court.

There were also numerous exceptions taken by the counsel for the plaintiff to the admission and exclusion of evidence during the progress of the trial, which may be referred to more conveniently in the opinion.

The case was submitted on full printed briefs.

*A. McFarlan,* for the appellant.

*S. Brown* and *Thomas Cunningham,* for the respondents.

DAVIES, Ch. J. The plaintiff is superintendent of the poor of the county of Fulton, and the defendants are superintendents of the poor of the county of Warren. This action is brought pursuant to the statute, to recover of the defendants the expenses to which the county of Fulton has been subjected, in maintaining and supporting three paupers claimed to have been removed from the county of Warren to the county of Fulton, in contravention of the provisions of section 81 of the Revised Statutes, relating to the support of the poor. (2 R. S., 5th ed., p. 853.)

This section declares that any person who shall send, carry, transport, remove or bring, or shall cause to be sent, carried, transported, brought or removed, any poor or indigent person, from any county to any other county, without legal authority, and there leave such person, *with* intent to make any such county to which the removal shall be made chargeable with the support of such pauper, or who shall entice any such poor person so to remove, with such intent, shall forfeit fifty dollars, and shall be deemed guilty of a misdemeanor.

The 82d section declares that the pauper so removed shall be maintained by the county superintendents where he may be. It then provides for giving notice to the superintendents of the county from which the pauper was brought or enticed; and the 83d section declares, that the superintendents receiving the notice shall, within thirty days, take back the pauper so removed, and support him, and pay the expenses of the county to which he had been removed, or shall give a notice, denying the allegations of such improper enticing or removal.

Section 84 provides that if there shall be a neglect to take and remove such pauper, and to notify such denial, then the superintendents shall be deemed to have acquiesced in the allegations of the notice, and shall be liable for the expenses of the support of such pauper; and by section 85, it is provided that if the allegations of such notice are denied, then a suit may be instituted to recover the expenses incurred in the support of such pauper. It is in pursuance of this section that this action has been commenced. It was admitted on the trial, that the plaintiff had duly served notice and

demand in writing on defendants, under the statute in such cases provided, before the commencement of this action, and defendants had duly served notice of denial, and which notices were produced and proven.

The referee who tried the action found the following facts: That in the forepart of December, 1861, and until January 13, 1862, Samuel Ward, Esther Ward his wife, and Miles Ward, their infant son, were poor and indigent persons, and inhabitants and residents of the county of Warren, in this State, and while so residing were relieved and supported in and at the expense of the county of Warren, and by defendants as superintendents of the poor of the said county, as paupers at the county poor house, and so continued to be supported until they left the said poor house; that said paupers left the said poor house on the 13th day of January, 1862, and went to the town of Bleecker, in the county of Fulton, arriving at the said town of Bleecker on the 24th of January, 1862; that the means and money requisite for the removal of the said paupers from the said county of Warren to the county of Fulton were furnished by Stephen Griffin, 2d, one of the said defendants, and the amount so furnished was $13.50; that said Stephen and other persons aided and assisted the said removal; that on the 31st of January, 1862, said Ward applied to the plaintiff as such superintendent for maintenance for himself, wife and child, as paupers, and they have ever since been maintained as such by the county of Fulton at the poor house and other places in said county, and that the expenses so incurred amounted to the sum of $63.38 at the time of the commencement of this action; that all the steps requisite and necessary to be taken to charge the said defendants for the expenses incurred, in pursuance of the provisions of the Revised Statutes, if the said removal of the said paupers to the county of Fulton was with the intent of making the county of Fulton chargeable with the support of said paupers, had been complied with.

He also found, as matter of fact, that a short time before the said paupers left the said poor house of Warren county

for the said county of Fulton, the said Ward represented, in substance, to the said Stephen Griffin, 2d, that he desired to leave said poor house and remove himself, wife and child to Upper Canada, where, as the said Ward represented, he had a home, property and friends, and that he desired some ten or twelve dollars to carry himself, wife and child to Fonda, in the county of Montgomery, where, he also repre-. sented, he had children who would assist him to money to go to his home in Canada.

That the money and means so furnished by the said Stephen Griffin, 2d, were furnished by him on account of such representations, and under the belief that the said Ward would, on his departure from said poor house, go with his said wife and child to the village of Fonda, and from there would go with his wife and child to Upper Canada. And that neither said Stephen Griffin, 2d, or the other defendants, or any of the other persons who aided and assisted in the removal of the said paupers from the county of Warren to the county of Fulton, did so with the intent of making the county of Fulton chargeable with the support of the said paupers, or either of them. And he found, as a conclusion of law, that no cause of action existed against said defendants, and he thereupon gave judgment for the defendants, which, on appeal, was affirmed at the General Term.

Upon the facts found by the referee, it is very clear that, if we adhere to the construction which these provisions received in the Supreme Court of this State more than twenty-five years since, the judgment rendered in this case must be affirmed. The case of *Coe* v. *Smith*, reported in 24 Wend., 341, is very like the one now under consideration, and the ruling in that case is decisive of this. It was an action under the same provisions of the Revised Statutes, by Coe and others, superintendents of the poor of the county of Genesee, against Smith and others, superintendents of the poor of the county of Allegany, to recover the expenses of a pauper, claimed to have been removed from the county of Allegany to the county of Genesee, with the intent to

make the county of Genesee chargeable with the support and relief of the said pauper.

The judge charged the jury, that if there had been any interference by others, or if the pauper had received the aid or assistance of any person in his removal from Allegany to Genesee, the defendants were liable; that it was wholly immaterial as between the parties to the suit, who had procured such aid or assistance, what motive or with what intent it had been procured or rendered; that the evidence fully established a sending and transportation of the pauper, within the meaning of the statute; and that there was no question for them to determine upon, except the amount of the recovery. The jury found for the plaintiff, and upon a motion for a new trial, the same was granted. NELSON, Ch. J., in the opinion of the court, said: "From an attentive consideration of these provisions of the statute, it appears obvious to me, that *a removal* of the pauper which will charge the county with the expenses of his maintenance, must be such as would subject the person concerned in it to the penalties imposed by the 63d [81st] section of the act. This is clearly the removal referred to throughout the several provisions on the subject, and which the defendants were required to deny. The plaintiffs were to give notice to the superintendents of the county from which the pauper was brought or enticed, informing them of such improper removal, and they are to deny the allegation of such *improper enticing or removal*. This is the preliminary issue raised between the parties before the commencement of the suit."

The learned chief justice very conclusively answers an argument, now urged upon us, with force and elaborate illustration. It is, that the legislature intended to prohibit a destitute person, or one who happened to be disabled, while temporarily residing in one county from returning to his family and friends residing in another, though he might choose to do so of his own mere motion; and as a matter of course to charge the county from which he thus removed with his support. He says: "This seems to me a forced and unreasonable construction, and overlooks *the intent of the*

*removal,* which is made an essential ingredient to constitute the offense within the act, and is, I think, equally necessary to create the legal liability in the civil suit." I understand the learned counsel for the appellant to concede, that to subject a party to criminal liability under the provisions of section 81, it must be charged and established that the person guilty of bringing or enticing the pauper into a particular county did so *with the intent* to make such county chargeable with the support of such pauper. But it is urged that the intent to subject the county to the support of the pauper is not needful to be shown, where the action is to charge the county from which he came with the expenses incurred by the county to which he came.

It is claimed that, if the removal took place " without legal authority," without any reference at all to the question of intent, that the liability in the civil action is established. But a careful examination of the provisions of the different sections, as was demonstrated in the case of *Coe* v. *Smith* (*supra*), will show that this argument, however ingeniously presented, cannot be maintained. As already observed, it cannot for a moment be doubted that *the intent* with which the removal was effected is the gravamen of the criminal offense.

The language of the other sections will be found, on examination, equally imperative in requiring that *the intent* with which the removal was effected is an essential ingredient in ascertaining the liability of the county from which the pauper removed.

Section 82 requires, as a preliminary step to fix that liability, that the officers of the county claiming to fix it upon another county, shall give notice to the appropriate authority of the latter county, " informing them of such improper removal," and requiring them forthwith to take charge of such pauper. What is meant by the words used here, " improper removal ? " Clearly such a removal as is spoken of in the 81st section, without legal authority, and with the intent to make the county chargeable where the pauper is left, with his support. And the 83d section provides for the denial of the allegation

of the notice, and if the officers on whom the same is served shall contest this liability, they shall give notice that they deny the allegation of such improper enticing or removal. It is very apparent to my mind that the legislature, in passing these various provisions, had in mind, as applicable to all of them, and to the criminal as well as civil liability, the question of intent, influencing and governing those engaged in the removal of the pauper, and that the intent to charge the county where the pauper was left, was equally to be established in the one form of action as the other. The referee having found in this case, as a matter of fact, that neither of the defendants, or any of the other persons who aided and assisted in the removal of the said paupers, did so with the intent of making the county of Fulton chargeable with the support of the said paupers, or either of them, it follows that the conclusion of law at which he arrived was correct. If, therefore, there was no error in the admission or rejection of evidence committed by the referee, the judgment rendered by him cannot be disturbed.

It remains to be considered, the several exceptions taken by the plaintiff to the rejection and admission of evidence. The first question to which our attention is called was this put by the plaintiff's counsel to Samuel Ward, one of the paupers alleged to have been improperly removed: "Where did Sandford Ward and you propose taking you and family with his team, when you so left Johnsburgh?" This was objected to by the defendants as irrelevant and immaterial and excluded, and plaintiff excepted. So far as the question sought to prove the purpose of Ward, it was subsequently established on the trial by the evidence of Ward himself, and therefore the plaintiff suffered no prejudice by the exclusion of the question. As to Ward himself, he had just testified that his purpose was to get to Johnstown, Fulton county, or to Canada, to live, and a repetition of the same inquiry as to him might well have been excluded by the referee. But a conclusive reason for the irrelevance of the question is, that it was wholly immaterial where Ward purposed taking the paupers, or where they intended going, if such removal was

not with the intent of making them chargeable to the county where they were removed to. The question put did not seek to elicit this vital information, and I can see no prejudice which the plaintiff sustained by its exclusion.

The statements made by Ward, the pauper, to one of the defendants, as to his purpose in leaving Warren county with his family, and the place to which he intended going, were part of the *res gestæ*, and important in showing the intent with which the defendant aided him in his removal, and the intent to make the county to which he was about to remove, chargeable with his support. It was, therefore, most important to ascertain the motives with which the defendant aided and assisted in the removal of the paupers, and the declaration of the pauper Ward to him at the time, as to the place where he intended going, and the reasons therefor, were legitimate testimony on this point.

The objections to the evidence of the intent of those aiding in the removal are untenable, as such evidence was eminently pertinent. The real question, to determine the liability of the defendants, as has already been shown, was whether the removal was made with the intent to charge the county of Fulton with the support of the paupers. The objections to this testimony were properly overruled, and it was competent to prove the intent with which an act was done by those engaged in its performance. (*Seymour* v. *Wilson*, 4 Kern., 568.) The same remark may be applied to the question objected to, put to the witness Sandford Ward : Did·you intend, in and what you did in assisting the Wards to remove from Warren county, to make them a charge upon and Fulton county liable to support them? The witness answered, I did not. For the reasons already stated, this inquiry was most pertinent; and the next question, as to the belief of the witness as to the intention of the paupers going to Canada, was for the same·reason unobjectionable.

The inquiries made of Philemon Griffin, who was active in removing the Wards, were pertinent to the inquiry whether he aided in such removal with the intent of making the

county of Fulton chargeable with their support. The same observations apply with equal force to the questions put to the witnesses Eldridge and Cronkhite, and the objections to such questions were properly overruled.

The referee also properly overruled the objection to the testimony of Griffin, one of the defendants, in which he stated the intentions of Ward as to his going to Canada and intending to remove there, and to his obtaining or expecting to get money from his relatives to go there. The expectations and intentions of Ward, and his declarations in respect thereto, as already observed, were part of the *res gestæ*, and the belief and intentions of the defendant were clearly admissible, and it was competent to show how they were influenced and created.

I see nothing material or important in the other objections to testimony admitted or excluded, needful to be commented upon, and am satisfied that no injustice has been done to the plaintiff in the admission or exclusion of any evidence.

As the judgment is clearly correct upon the facts found by the referee, I am of the opinion that the judgment should be affirmed, with costs.

LEONARD, J. The right of action in this case, if any exists, is given by statute. (1 R. S., part I, chap. 20, title 1, pp. 628, 629.) The provisions contained in several sections of that title, relating to "the relief and support of indigent persons," bear upon the remedy and the manner of enforcing it.

Section 58 declares that, any person who shall remove, or cause to be removed, any poor or indigent person from any county to any other county, without legal authority, and there leave such poor person, with intent to make the county to which the removal shall be made, chargeable with the support of such pauper, or who shall entice any such poor person so to remove, with such intent, shall forfeit $50, to be recovered by the overseers of the poor of the town, or the superintendent of the poor of the county into which the said poor person shall be removed; and shall be deemed

guilty of a misdemeanor, punishable by fine and imprisonment.

The next section makes it the duty of the county superintendents to maintain the pauper so removed or enticed where he may be. It is then provided that they may give notice to either of the superintendents of the poor of the county from which the pauper was brought or enticed, informing them of *such* improper removal, and requiring them forthwith to take charge of *such* pauper.

By the next section, the county superintendents to whom such notice may be directed, are required to take and remove the pauper to their county and there support him, and pay the expense of the notice, and of the support of such pauper; or notify in writing the county superintendents from whom such notice was received, that they deny the allegation of such improper enticing or removal.

The next section declares that if there shall be a neglect to remove such pauper, and notify such denial, within the time prescribed, the county superintendents whose duty it was to do so, and their county, shall be deemed to have acquiesced in the allegations contained in such first notice, and shall be forever precluded from contesting the same; and their county shall be liable for the expenses of the support of such pauper, which may be sued for and recovered, from time to time, by the county superintendents incurring the said expenses, in actions against the superintendents of the poor of the county so liable for such expenses.

The next section provides for the case of a denial of the allegations of the first notice. The county superintendents, upon whom the notice of denial may be served, are authorized, within three months, to commence a suit against the county superintendents of the poor of the county to whom the first notice was directed, for the expenses incurred in the support of such pauper; if they neglect to prosecute their action with effect, they are forever precluded from any claim against the county to whose officers the first notice was directed, for the support of such pauper.

This is the tenor and effect of five sections of the title

above referred to, which alone have any bearing upon the question under consideration.

The intention of the law is to prevent the improper removal of indigent persons from one county, where they are chargeable as paupers, for the purpose of imposing the expense of the maintenance of such persons upon some other county; and, in case of such removal, to impose a punishment upon the individual offender, and to make it the duty of the poor officers of the county from which the pauper has been so removed, to take him back to the proper county and bear the expense of his support and removal, and in case of the refusal of the officers of the county from whence the removal has been made, to perform this duty, or in case of a denial of the obligation so to do, to afford a remedy to the county aggrieved by an action. No restraint appears to be imposed upon the locomotion of the pauper, and no right of action is given in case the pauper, of his own mere motion, removes from one county to another. His freedom to come and go at his pleasure is not restrained. The statute comes in aid to prevent, only, individual interference with the removal of the pauper, and, in that case, to continue the liability for his support upon the locality where it has last fallen.

To the same effect is the decision of the late Supreme Court in the case of *Coe* v. *Smith* (24 Wend., 341).

The referee is correct in his construction of the statute, that the intent of the persons who aided the paupers to remove from Warren county, to make them chargeable upon another county, must be established by the plaintiff to entitle him to a recovery, and from the facts, as found by him, the judgment is a correct result.

Several exceptions were taken, at the trial, to the admission or exclusion of evidence, which I will now examine.

It appeared that Griffin, one of the defendants, had advanced money to the paupers to aid their removal, and he, together with several others who had aided them in their journey from Warren to Fulton county, were witnesses at the trial, and were inquired of, by the counsel for the defendants, against the objection and exception of the opposing

counsel, respecting their intent in causing the paupers to become chargeable on Fulton or any other county.

The statute having made the intent of the persons aiding or causing the removal to be material, the inquiry appears to be within the reason and authority laid down by this court in *Seymour* v. *Wilson* (4 Kern., 568). There the intent to defraud was by statute a question of fact, as it is in the present case. It appears to be a dangerous rule to permit a witness to give evidence as to the emotions of his mind; but with the qualification stated by the learned judge who delivered the opinion in *Seymour* v. *Wilson*, that the evidence is to be received only for what it is worth, and is not to control facts and circumstances which are proven in the case, and are not consistent with the declaration of the witness as to his secret intent, the rule may be made to work, under the careful direction of a presiding judge or referee, without essential prejudice. The application of the rule should not be extended beyond the class to which it has been applied by this court.

The referee also admitted evidence of the declarations of one of the paupers as to his property in Canada, and the relatives he had there and in other places along the route, who were able to assist him, and upon whom he relied for that purpose.

This evidence was part of the *res gestæ*, and tended to show what were the motives or intentions of those who removed or caused the removal of the paupers, and was for that reason admissible.

The plaintiff's counsel asked one of the paupers, who was a witness for the plaintiff, the following question: "Where did Sandford Ward and you purpose taking you and family with his team when you so left Johnsburgh?" This was excluded on the defendants' objection. The plaintiff was entitled to inquire as to what was said and done on that occasion to prove the intent of these witnesses as to the removal of the paupers, but the question went beyond that, and inquired as to the purpose of the parties. The inquiry may have related to what one or the other understood or

believed, and had no foundation in fact.    The referee properly excluded such evidence.

Philemon Griffin, the keeper of the county poor house in Warren county, testified to conversations between himself and one of the paupers (the husband of one and the father of the other of the three), in which he stated to him his property in Canada and friends along the route, and wished the assistance of the keeper in procuring money of the superintendents to enable him to remove to Canada.    This evidence was objected to by the plaintiff's counsel.    It appears that the witness communicated these statements to the defendant Griffin, as he was requested to do.

The evidence tended in some degree to show the motive or intent of the defendant Griffin not to be in violation of the statute, but from a charitable motive, and is really the same as if the statement had been made to the defendant Griffin by the pauper himself.

One of the defendants, George Cronkhite, was a witness for the defendants, and testified to a conversation with the pauper, in which he said he had a home and friends in Canada. There was no request to communicate this to the other defendants, nor is there any evidence on the part of the plaintiff, or allegation in the complaint, charging this witness with removing or aiding the removal of the paupers, nor does he appear to have communicated the statement of the pauper to any one.    It is impossible to perceive that the evidence was in any respect material to the case, but no fact appears to have been found which was based on this evidence, and, although there was an objection and exception by the plaintiff's counsel, there can have been no prejudice to him arising from it. It was merely an immaterial fact.

The referee allowed Stephen Griffin, 2d, one of the defendants, to be recalled by the defendants to explain a statement made by him on his cross-examination after he had left the stand as a witness.    This was discretionary with the referee, and cannot be alleged for error.    The same may be said in respect to the refusal of the referee to permit the plaintiff to inquire of this witness, on his further cross-examination,

whether he remembered answering a question put to him previously, that he did not know who furnished the Wards (the paupers) the means to go away with. The refusal appears to be harsh, but is not a ground for error.

The same witness was allowed to state the time and circumstances attending the making of an affidavit by himself, used for the purpose of changing the place of trial in this action, which appeared inconsistent with some part of his evidence. It left the referee to determine whether, from hurry or confusion, he had made a mistake in his affidavit. No attempt was made otherwise to vary or explain the contents of the affidavit. It might have affected the question of his credibility, but there is no rule of evidence preventing a witness from varying or even contradicting a former statement under oath on the same subject.

The same witness was also allowed to state what he meant by certain statements in a letter written by him to one Noble, to whom he inclosed a sum of money to be paid out by him for removing the paupers, in part, and the balance to be paid to the wife, also one of the three paupers. The statement of the witness was wholly inconsistent with the letter, and ought to have affected the question of his credibility unfavorably, but no authority has been cited, and I think none can be found that will preclude the witness from attempting to give a different version to his letter from that which the plain context demands. It is unlike the case of a contract which cannot be altered or explained by parol. It becomes a question only of credibility when a witness seeks to vary the context of a letter by oral explanations. The court or referee are to judge of the reasonableness and character of the explanation, but it is not to be excluded.

There appears to be no legal error occurring in the trial or judgment, and the judgment must, I think, be affirmed, with costs, although the finding of the referee upon the question of intent is wholly unsatisfactory to my mind.

Judgment affirmed.